JOHN SKINNER *et al.*, plaintiffs in error, *vs.* FRANCIS T. WILLIS, defendant in error.

1. Where a mortgage *fi. fa.* sold land, and one of the plaintiffs bid off the same, and the sum bid was credited on the *fi. fa.* by consent of the sheriff and the bidder, and entries were made accordingly:

*Held*, that under our law the purchaser might, with proper averments in his declaration, maintain ejectment for the land, although no deed was made by the sheriff to said purchaser.

2. A purchaser from the defendant in execution, after the date of such a sale, is not charged with notice thereof, and it is incumbent upon the plaintiff in a suit against such purchaser to show such notice or other *mala fides* before he is entitled to recover the land.

Ejectment. Title. Judicial sale. Vendor and purchaser. Before Judge HALL. Newton Superior Court. September Term, 1874.

Willis brought ejectment against John Skinner and Joseph Bridges for a tract of land in Newton county. The record fails to set forth either the declaration or the plea. The evidence presented the following facts:

On July 10th, 1848, one Harry Camp mortgaged the land in controversy to Adams, Hopkins & Company, of which firm the plaintiff was a member, to secure the payment of $4,-252 28. This mortgage was foreclosed, a levy of the execution made on June 20th, 1854, and on the first Tuesday in the following August, the property embraced therein was sold to the plaintiff. The following entries were made on the execution:

"The levy of the 20th June, sold on the first Tuesday in August, for $800 00, and after paying levy, advertising, commissions and issuing, leaves $785 00 to be credited on this *fi. fa.* This August 12th, 1854.

(Signed)                    LEWIS ZACHRY, D. Sh'ff."

"Received of John J. Floyd the sum of $15 00, in full of costs, levy, advertising and commissions on the within *fi. fa.,* and levy and sale, money advanced by him for the plaintiffs. This 24th August, 1854.

(Signed)                    LEWIS ZACHRY, D. Sh'ff."

"Dr. Francis T. Willis, in behalf of the plaintiffs, purchased the land levied on at the sum of $800 00 and paid in no money. The cost—advertising, levy and commissions—amounts to $15 00, which leaves the sum of $785 00 to be credited on this *fi. fa.* 24th August, 1854.

(Signed)                    JOHN J. FLOYD, Pl'ffs Att'y."

The sheriff's book showed the following entry :
" August sale, 1854.
"Harry Camp's land to Dr. Willis...................$800 00
"Levy, $1 87½ ; Ad., $2 50 ; Com., $10 00 ; *Fi. fa.,* $0 62½—$15 00.    Amount to be credited on *fi. fa.,* $785 00."

No deed was made to Willis.   Camp remained in possession.   He paid tax on the land for the year 1854.   From that date to 1867, inclusive, he only paid tax on seventy acres thereof.

Mr. Hardwick testified that he lived on the land in 1867 ; that he sought to purchase it from Camp, who replied that he could get an order from court to sell him the seventy acres, homestead, that the balance belonged to Dr. Willis, but that he could arrange for him to get it ; that Skinner had been in possession of the land for two or three years ; that the rent was worth $100 00 per annum.

The plaintiff here closed.   The defendants moved for a non-suit upon the ground that no title was shown in the plaintiff.

The motion was overruled and the defendants excepted.

The evidence for the defendants tended to show that the mortgage was paid off before foreclosed, but that it was kept open and the land sold thereunder to protect it from Camp's creditors. Harry Camp and his wife, on November 28th, 1870, conveyed the land to their son, Thomas Camp. The deed recites the consideration of $700 00. On March 9th, 1872, Thomas Camp executed a bond for titles to the land by which he obligated to convey it to Skinner on the payment of the purchase money. This instrument is omitted from the brief of evidence, and there is no testimony as to its consideration, payments thereon, etc.

The court charged the jury "that if they believed from the evidence that Adams, Hopkins & Company held a mortgage on the land of Harry Camp, and that the mortgage was foreclosed, execution issued and levied, and that the land now sued for, was sold by the sheriff on sheriff's sale day, and purchased by the plaintiff, and the plaintiff paid the purchase price, or, being one of the firm of Adams, Hopkins & Company, gave credit on the *fi. fa.* for the purchase price, then plaintiff is entitled to recover the premises in dispute, with *mesne* profits, that is the value of the rent of the premises from the time the defendants went into possession up to this date."

The jury found for the plaintiff the land in controversy, less the seventy acres homestead exemption, and the sum of $75 00 for the three years' rent of that part of the land.

The defendants moved for a new trial upon the grounds, amongst others, of error in overruling the motion to nonsuit, of error in the aforesaid charge, and because the verdict was contrary to the law and the evidence. The motion was overruled and defendants excepted.

John J. Floyd, for plaintiffs in error.

Clark & Pace, for defendant.

McCay, Judge.

1. We assume that the declaration in this case contained the averments necessary to authorize the introduction of the evidence on which this case went to the jury.   Under our action for land provided for by section 3389 of the Code, the precise nature of the plaintiff's claim may be set forth in his abstract of title.   So in the action of ejectment the demises may be so laid as to set out precisely the nature of the plaintiff's claim to the land.   As the writ does not form a part of the record, we, as is the rule in such cases, will presume it was sufficient to authorize the evidence, or the evidence would have been objected to for that reason.   At last, therefore, the question is whether, under our law, an equitable title can sustain an action of ejectment.   We see no difficulty in this if proper parties be before the court   In *Bullard vs. Pitts,* 3 *Georgia,* 5, this court held that in this state a perfect equity was a legal right, and it has more than once since then been held that a bond for titles, with the purchase money paid, was a good legal title.   In the case at bar, if the facts be as claimed for the plaintiff, his *right* is a complete one, except as to the mere form of a written conveyance of the land. We have, 1st, the levy and statement of the sale on the execution; 2d, the sheriff's docket, (kept as provided by the act of 1810: Cobb's Digest, 557,) stating the sale, that Doctor Willis was the purchaser, the price paid, and the disposition of the money.   This makes out a perfect case in the purchaser to demand a title.   Was there anything more than this in *Bullard vs. Pitts?*   Indeed, there was less, for the payment of the purchase money was proven by parol.   Here it is in writing by an official record.   It seems to us that if section 3082 of the Code, authorizing a suitor to choose his forum, either at law or equity, at his own discretion, is to mean anything, and we think it means a great deal, that it covers a case like this—a perfect equity—a complete right with nothing to be done but to make a formal conveyance.

2. But whilst we think the plaintiff has made out a good

right at law against the defendant in execution, yet we do not think he has made a good case against the purchasers, or at least we do not think the charge of the court was justified as to the purchasers from the defendant. The court assumed that they had notice, that if the plaintiff had the right to recover against the defendant in *fi. fa.*, he had the right to recover generally. Perhaps the evidence might have justified the jury in finding the present claimant of the land had notice, but we think the charge was error, because it did not leave that question to the jury. We are clear that a purchaser would not be charged with notice of these entries, nor that he would be bound to trace up the history of the mortgage, its foreclosure, levy and sale. The sheriff's docket is not kept for such a purpose. We have no fault to find with the verdict. Under the evidence the jury might well have treated the evidence of Camp as overcome entirely by the other evidence of his recognition of the right of the plaintiff. But it may be that these purchasers are innocent; at any rate, the court had no right to presume they were not. He should have left that to the jury.

Judgment reversed.